GEORGE A. POOLE *et al.* v. E. W. POINDEXTER *et al.*

No. 14,109.    (83 Pac. 126.)

1. PRACTICE, SUPREME COURT—*Findings by a Referee—Review.* Where the evidence taken before a referee was not all preserved in the record his findings were held not open to review.

2. PARTNERSHIP—*Adverse Interest of a Partner—Recovery of Expenses.* A member of an association advanced money to a corporation to enable it to continue experiments that it had contracted to make for the association, and accepted stock of the corporation for the funds so furnished. There was nothing in the evidence, only part of which was preserved, that was inconsistent with actual good faith and fair dealing. Under the circumstances it could not be said that the transaction was of such a character as to preclude the member from recovering from the association expenses incurred while looking after operations under the contract.

3. REFEREE—*Filing of Report—Withdrawal.* A referee presented his report to the clerk on the last day allowed for its filing, had it marked "filed," and then withdrew it and retained it for several days to have it bound. It was held that the report was filed in time.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed November 11, 1905. Affirmed.

*Hazen & Welch,* for plaintiffs in error.

*Quinton & Quinton,* and *Loomis, Blair & Scandrett,* for defendants in error.

*Per Curiam:* In 1899 eleven persons associated themselves together for the purpose of acquiring lands in Trego and Ellis counties believed to contain gold-

bearing shale, and obtaining a process by which the gold could be extracted, their plan including the subsequent forming of a corporation. Lands were purchased and attempts were made to discover such a process. These efforts were not attended with success, and disagreements arose with regard to the management of the business, as a result of which several members of the association brought a suit to wind up its affairs and distribute its assets. A referee was appointed to take an accounting between the parties to the suit. He did so, and made a report which was approved by the court and upon which a judgment was rendered. The plaintiffs were dissatisfied with the findings of the referee on several matters and have brought this proceeding to reverse the judgment.

The principal objections urged against the findings of the referee relate to allowances made to E. W. Poindexter and E. S. Quinton, who were members of the association, for expenses incurred while looking after its business. The first objection in this regard is based upon the fact that a part of these expenses arose after the death of one of the members of the association. It is argued that the association was a partnership; that the death of one of the partners effected its dissolution; and that its members could not be charged thereafter with the expenses of carrying on its business. In answer to this the defendants in error say that the company was a mining partnership, and that therefore its existence was not affected by the death of one partner; or, if it was an ordinary partnership, that the expenses involved were made in the preservation of its property by authority of all the members, and were therefore chargeable against them.

It is at least doubtful whether the organization was, strictly speaking, a mining partnership, although it may have so far partaken of the nature of one as to be subject to the same rule in this regard. This need

not be determined, however, for the evidence taken before the referee is not all preserved in the record, and without it we cannot say that his findings might not be upheld upon one of the theories suggested.

The second objection made is that a part of the expenses in dispute were incurred in transactions conducted in violation of a restraining order granted by the court at the commencement of the suit forbidding the making of any contract whereby the association or its members might be made liable. It does not appear, however, that this order was violated, and a subsequent application for an injunction of broader scope, directed against the transaction of any business for the company, was not allowed.

The third and final objection is based upon a claim that Poindexter and Quinton were financially interested in the business in which the expenses were incurred, otherwise than as members of the association, and therefore were not entitled to reimbursement from it. Experiments designed to discover a process for the extraction of gold from the shale were conducted by a corporation under a contract with the association. A part of the expenses referred to were made in looking after operations under this contract. It is contended that Poindexter and Quinton were stockholders in this company and were by this fact disqualified to represent the interests of the association in the matter. It is shown that a small amount of stock was offered them with the avowed purpose of enabling them to become directors, but it is not clear that this stock was accepted. Poindexter, however, stated that, finding the corporation to be without funds to prosecute the work, he furnished a sufficient amount to enable the experiments to be continued, in order that the efforts might not be abandoned, and accepted stock for it. There is nothing in the evidence that is preserved that is inconsistent with actual good faith and fair dealing, and in the absence of a part of the

testimony it certainly cannot be said as a matter of law that the character of the transaction was such as necessarily to preclude a recovery of expenses from the association.

A second complaint relates to a controversy between S. S. Ott and E. S. Quinton. F. O. Popenoe, one of the members of the association, withdrew under an agreement that in order to be relieved of further liability he should pay $500 in addition to $450 that he had already contributed, and that whoever took his interest should have the benefit of the additional payment. Ott took half of it, which he afterward transferred to Quinton, and the disputed question is whether the transfer carried with it the share of the payment mentioned. In the absence of a part of the evidence this court cannot review the finding of the referee upon this matter.

An objection is also made to the time the referee's report was filed. On the last day allowed for its filing the referee presented it to the clerk, had it marked filed, and then withdrew it and retained it for several days in order to have it bound. It is claimed that the document was not actually filed until its subsequent return to the clerk. It is clear that there may be circumstances, such as were present in *Wilkinson v. Elliott*, 43 Kan. 590, 23 Pac. 614, 19 Am. St. Rep. 158, under which a paper may be so indorsed by the clerk without in fact being filed. But it is equally clear that a document may be on file in legal contemplation although it is not physically in the clerk's possession or in his office. In this case the notation by the clerk upon his records of the filing of the report was a notice to all concerned that it had been completed and received by him and was from that time in his official custody. An inspection of it could readily have been had at any time thereafter by any one interested. It is not conceivable that any rights were prejudiced by

42—72 KAN.

its temporary removal. The suggestion that changes were made in it before its return is not borne out by the evidence. We think the report was effectually filed within time.

The judgment is affirmed.